IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SIDNEY E. SCOTT,

       Petitioner,

v.                                          CASE NO. 4:06-cv-533-SPM-AK

JAMES R. MCDONOUGH,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

      This matter is before the Court on Doc. 6, Amended Petition for Writ of Habeas Corpus,

filed by Sidney Scott.[1]  Petitioner has paid the $5.00 filing fee.  Respondent has filed a response,

Doc. 10, and Petitioner has filed a reply.  Doc. 17.  This cause is therefore in a posture for

decision.  Having carefully considered the matter, the Court recommends that the petition be

denied.

## BACKGROUND

      Petitioner was convicted by a jury of sexual battery of a child by a person with familial or

custodial authority and sentenced to 30 years imprisonment.  The judgment was per curiam

affirmed on appeal.  *Scott v. State*, 848 So.2d 314 (Fla. Dist. Ct. App. 2003).

      Petitioner filed a state court petition for a writ of habeas corpus, alleging ineffective

assistance of appellate counsel.  The court denied relief "on the merits."  Doc. 10, Ex. H; *see*

---

[1]This cause was administratively reassigned to the undersigned on September 10, 2007.
Doc. 22.

*also  Scott v. State*, 871 So.2d 214 (Fla. Dist. Ct. App. 2004).

Petitioner next filed a 3.850 motion for motion conviction relief.  The motion was amended several times.  In a lengthy order, the state court examined each claim for relief, concluding that Petitioner was not entitled to relief.  Doc. 10, Ex. J.  Petitioner appealed, and the appellate court affirmed without written opinion.  *Scott v. State*, 940 So.2d 1130 (Fla. Dist. Ct. App. 2006).

The instant petition followed.  After amendment, Petitioner presents the following claims: (1) that counsel was ineffective for failing to investigate and move to suppress illegally obtained written statements; (2) that counsel was ineffective for failing to exclude prejudicial portions of written statements; (3) that appellate counsel was ineffective for failing to raise on appeal the court's failure to exclude irrelevant/prejudicial statements from evidence; (4) that counsel was ineffective for "opening the door to prejudicial evidence that was otherwise inadmissible"; (5) that counsel was ineffective for undermining his own credibility by failing to "live up to the promises he made in opening" statements; (6) that counsel was ineffective for failing to make an effective closing argument; (7) that counsel was ineffective for failing to challenge "whether the testimony of collateral crimes evidence introduced at trial met the requirements under Williams rule" and for failing to preserve the issue for appeal; (8) that counsel was ineffective for failing to request limiting jury instructions on the collateral crime evidence; (9) that counsel was ineffective for failing to impeach the victim with prior inconsistent statements; (10) that counsel was ineffective for failing to impeach the credibility of the victim's sister and to move for a mistrial; (11) that counsel was ineffective for failing to investigate and present a viable defense, for failing to interview known witnesses, and for

misadvising Petitioner regarding his defense and his right to testify about that defense; (12) that

counsel was ineffective for failing to investigate and present an alibi defense or "what would

have been akin to an alibi"; (13) that counsel was ineffective for failing to interview and call

"'other known witnesses to show motive or bias to fabricate'"; (14) that the conviction was

obtained by the failure of the State to disclose evidence favorable to Petitioner; (15) that counsel

was ineffective regarding the State's DNA evidence; (16) that Petitioner was denied his right to a

public trial and counsel was ineffective for failing to protect that right; (17) that counsel's "errors

and omissions cumulatively denied him a fair trial and the effective assistance of counsel; (18)

that counsel was ineffective by misadvising Petitioner regarding raising mitigating circumstances

at sentencing and by abandoning him "when the judge expressed shock at his idea."  Doc. 6.

Each will be discussed in turn.

## DISCUSSION

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state

court adjudication

(1)     resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if

the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court has on a

set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "A

state-court decision will certainly be contrary to...clearly established precedent if the state court

applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*,

529 U.S. at 405.  A state-court decision will also be contrary to clearly established Supreme

Court precedent "if the state court confronts a set of facts that are materially indistinguishable

from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the

Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from [Supreme

Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

at 413.  The federal court considering a habeas petition "may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable." *Id*. at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative

of clearly established federal law.  Instead, this Court must look to the specific holdings of

Supreme Court cases themselves.  If the Supreme Court has not issued a specific holding on the

issue at hand, then the state court's decision is not contrary to or an unreasonable application of

clearly established federal law.  *Carey v. Musladin*, ____ U.S. ____, 127 S.Ct. 649, 654, 166

L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the

state court's factual determinations are correct, and the petitioner bears the burden of rebutting

the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see*

*also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision.  *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002).  Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation.  *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution.  *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982);  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989).  This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations.  *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

Because the vast majority of Petitioner's claims allege ineffective assistance of counsel, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of

counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance.  *Strickland*, 466 U.S. at 689-90.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight."  *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007).  "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel."  *Id*.  When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing.  *Id*.  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment."  *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would

restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.  Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.  Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable.  *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted.

*Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

    1.      Failure to investigate and move to suppress illegally obtained written statements.

    This claim was rejected by the state court on the ground that under Florida law the interception of a prisoner's mail "is not an invasion of privacy or an illegal sentence," and thus, counsel was not ineffective for "failing to file a nonmeritorious motion to suppress."  Doc. 10, Ex. J.  The court also rejected any claim of prejudice, i.e., "that the jury would have found him not guilty if they had not seen the letters," to be "preposterous."  *Id.*

    Having carefully considered the matter, the Court has no hesitation in concluding that the state court's decision on this claim was not contrary to nor an unreasonable application of *Strickland*.  Both Florida and United States Supreme Court law allow the confiscation of a prisoner's general mail which comes "into the possession of the officials of the penitentiary under established practice, reasonably designed to promote the discipline of the institution."  *Stroud v. United States*, 251 U.S. 15, 21 (1919).  Because counsel had no basis for seeking suppression of the letters, he did not act deficiently in failing to file a frivolous motion.

    2.      Failure to exclude prejudicial portions of written statements.

    The state court denied this ground, noting that counsel did in fact argue against the admission of the letters both before trial and during trial "on multiple grounds, including relevancy of certain prejudicial sections of the letters."  *Id.*  Counsel's failure to be successful in excluding the letters is not deficient performance, and therefore, the state court's ruling is entitled to deference.

    3.      Failure of appellate counsel to raise on appeal the court's failure to exclude irrelevant/prejudicial statements from evidence.

This claim was raised in the state court habeas petition and rejected on the merits.  While this particular issue was not before the post-conviction court, it noted that in assessing trial counsel's effectiveness related to the introduction of these letters, the "record shows the letters were properly admitted into evidence."  Doc. 10, Ex. J.  The record supports this conclusion.  The letters were not unconstitutionally confiscated or turned over to the detective, they were written by Petitioner to the victim, and they contained admissions by Petitioner against his interest.  The court also weighed probative value of the letters and the danger of unfair prejudice to Petitioner if they were admitted and found them not to be unfairly prejudicial even without redaction of the allegedly offensive statements regarding Petitioner's past criminal history.

Appellate counsel has no duty to raise every non-frivolous, colorable claim on appeal, but instead, should "winnow[ ] out weaker arguments...and focus[ ] on one central issue if possible, or at most on a few key issues."  *Jones v. Barnes*, 463 U.S. 745, 751-51 (1983).  In Florida, a trial court has broad discretion regarding the admissibility of evidence, and on appeal, the court's evidentiary rulings are subject to an abuse of discretion standard of review.  *Meledez v. State*, 700 So.2d 791, 793 (Fla. Dist. Ct. App. 1997).  With these standards in mind, appellate counsel was perfectly within the realm of reasonable professional judgment in assessing the viable claims for appeal and deciding which ones deserved attention and rejecting raising an issue which had only the slightest chance of success.  Accordingly, the state court's decision is not contrary to or an unreasonable application of *Strickland*.

4.       "[O]pening the door to prejudicial evidence that was otherwise inadmissible."

During cross-examination, defense counsel questioned the victim about two letters she had written to Petitioner while he was in jail after she had denied in her deposition sending him

any additional letters.  In these letters, the victim expressed "shock about what [her] sisters were saying" about Petitioner and made a statement to the effect that her mother "was trying to set [Petitioner] up."  The court agreed with the State that counsel had opened the door, but it limited the State's redirect to "rais[ing] the question that there's allegations against the stepfather [Petitioner] by the sisters without going into detail of the allegations."

Counsel obviously made a tactical decision to impeach the victim's credibility and to show that she was initiating contact with Petitioner though it had been forbidden.  Even if counsel erred in not realizing he was opening the door to some kind of explanation regarding the specific statements noted, Petitioner did not suffer, as the state court found, the level of prejudice necessary to impugn the integrity of the trial or to undermine confidence in the outcome.  Thus, the state court's decision is entitled to deference.

     5.     Counsel's undermining of his own credibility by failing to "live up to the promises he made in opening" statements.

In this ground, Petitioner charges that counsel "unreasonably told the jury in opening statements that State witness Mary [Scott] would take the stand and tell them that she never made any observations," which contradicted her testimony at trial that she had "witnessed a collateral sex act between the victim" and Petitioner.  In Petitioner's view, this "error in undermining his own credibility" with the jury denied Petitioner a fair trial.

This claim is patently without merit.  As the state court noted, "Opening remarks are not evidence, and the purpose of opening argument is to outline what an attorney expects to be established by the evidence."  *Occhicone v. State*, 570 So.2d 902, 904 (Fla. 1990).  The fact that the evidence turns out differently than counsel expected is not per se deficient performance.

Even so, this one unrealized expectation certainly did not prejudice Petitioner, as it is highly unlikely the jury, which was advised that the opening statements carried no evidentiary weight, even remembered the reference.

      6.      Failure to make effective closing argument.

      In this claim, Petitioner maintains that counsel should have argued a lack of evidence in his closing argument, just as he had argued in his motion for judgment of acquittal.  The state court found the claim to be without merit because there was "strong evidence" against Petitioner, and thus, "it would have made no sense for counsel to make a false lack of evidence argument to the jury."  According to the court, "counsel sufficiently argued what he could given the facts of the case...."

      The content of a closing argument is plainly the type of decision which is generally protected by *Strickland* from second guessing by the Court.  In this case, counsel's closing argument focused primarily on the credibility of the State's witnesses, the burden of proof, and the possibility that the victim and her mother and sister were fabricating the allegations of abuse. This was reasonable in light of the evidence, and thus, the state court's decision was not contrary to or an unreasonable application of *Strickland*.

      7.      Failure to challenge "whether the testimony of collateral crimes evidence introduced at trial met the requirements under Williams rule" and to preserve issue for appeal.

      In this claim, Petitioner alleges that counsel failed to challenge the admission of certain uncharged sexual acts with the victim which predated the offense charged in the information. This claim is patently refuted by the record.  The court held a pretrial hearing on this issue, and counsel had a continuing objection to it during trial.  The state court's conclusion in that regard

is fully supported by the record, and thus, it is entitled to deference.

8.      Failure to request limiting jury instructions on collateral crime evidence.

Florida state law does not require that a limiting instruction be given every time collateral crime evidence is placed before a jury. Instead, the court must give the limiting instruction at the time the evidence is admitted only if requested to do so. Fla. Stat. Ann. § 404(2)(b)2. At the time this case was tried, the applicable standard jury instruction regarding other crimes evidence allowed the court to instruct the jury that the evidence could be used "to corroborate the testimony" of the victim. *In re Standard Jury Instructions–Criminal Cases*, 765 So.2d 692 (Fla. 2000).

Because the court allowed the other crimes evidence to be admitted as corroboration, it could have given the other crimes instruction if either the State or Petitioner had made the request. It was not, however, ineffective assistance of counsel for Petitioner's attorney not to want to draw attention to the "other crimes" evidence when he had fought so hard to keep it from the jury's consideration in the first place. He particularly would not have wanted to put into the jury's mind that it could in fact consider the evidence as corroborating the child's testimony about the particular events at issue. Thus, counsel acted reasonably in merely standing on his objections and not doing something that might possibly have given the "other crimes" evidence more weight or credence.

Furthermore, at the conclusion of the evidence, the court instructed the jury that it could convict Petitioner only of the crime charged in the information and proved by the State beyond a reasonable doubt, which is sufficient under the statute. For the reasons stated previously, counsel did not act ineffectively in failing to request a further limiting instructions at the

conclusion of the evidence.

Thus, the state court's conclusion that a limiting instruction was "unnecessary and counsel is not deficient for failing to request one" is not contrary to or an unreasonable application of *Strickland*.

9.      Failure to impeach victim with prior inconsistent statements.

While acknowledging that counsel did in fact impeach the victim's credibility regarding the two "love letters" she wrote him, Petitioner claims that counsel did not attempt to impeach her credibility on other "non-cumulative inconsistent statements," such as whether her mother caught Petitioner having sex with the victim, and that this failure led to his conviction.  The state court rejected this claim, finding that counsel did in fact impeach the victim's testimony and made a credibility an issue during closing argument.

During cross-examination, counsel did not allude to any inconsistent statements relative to the victim's interview with child protection personnel.  Even if this were a potential avenue for impeachment, counsel may have determined that he did not want the jury to focus on any statements the child made months before trial when her recollection would have been fresher than at trial.  Even if this were an unreasonable strategic move, there is not a reasonable probability that this failure to impeach the child on the issue of whether her mother saw her having sex with the mother's husband, the child's stepfather, affected the outcome of the trial.

10.     Failure to impeach credibility of victim's sister and to move for a mistrial.

In this claim, Petitioner charges that counsel was ineffective in failing to impeach the credibility of the victim's sister regarding whether she had witnessed one or two sexual acts between Petitioner and the victim.  The state court's conclusion that the record shows that

counsel did attempt to impeach the sister is factually supported by the record, and in the end, Petitioner was not prejudiced by counsel's actions.  Indisputably, she testified that she witnessed at least one prior sexual act between Petitioner and the victim, which sufficiently corroborated the victim's testimony of a on-going pattern of abuse.  There is not a reasonable probability that the court would have granted a mistrial based on the prosecutor's attempts to rehabilitate her witness by having her explain her prior statements even if counsel had made the motion.

      11.    Failure to investigate and present a viable defense, to interview known witnesses, and misadvice regarding defense and right to testify about that defense.

In this ground for relief, Petitioner claims that counsel failed to investigate a claimed defense that he did not stand in a position of familial or custodial authority over the victim, even though he was married to the child's mother and living in the marital home, since he and the victim were engaged to be married "with the consent of her mother."

This claim is patently frivolous.  Counsel properly advised Petitioner that even consensual sex between him and his stepdaughter was illegal under Florida law.  *See* Fla. Stat. Ann. § 794.011(8)(b) (without regard to willingness or consent of victim, "which is not a defense to prosecution under this subsection," person who is in position of familial or custodial authority to person less than 18 years of age and who engages in any act with that person while she is 12 years of age or older but less than 18 years of age which constitutes sexual battery commits first degree felony).  Petitioner does not dispute the state court's conclusions that he was married to the victim's mother, and that he, the victim's mother, the victim, and her siblings lived together as a family.  The failure to adopt the victim does not diminish Petitioner's role as the child's stepfather and his roles as parent and caregiver in the family unit, roles which placed him in a

position of familial or custodial authority over the victim.

Petitioner absolutely had the right to tell the jury that he was in love with the victim and that they were engaged to be married, no matter how damning or ridiculous such admissions would have been.  The record is clear, however, that Petitioner knowingly and voluntarily waived his right to testify, and the state court's conclusion in that regard is likewise entitled to deference.

      12.     Failure to investigate and present alibi defense or "what would have been akin to an alibi."

In this ground, Petitioner claims that counsel acted ineffectively in failing to "discover where, when, and what actually occurred" since he and the victim were "never alone" during the relevant time period but were "surrounded by many others...under crowded conditions" which made it impossible for him to have abused her without someone noticing.  He maintains that he gave counsel the name of fifteen witnesses who would have corroborated this contention.

The state court found that counsel did not act deficiently in light of the evidence, which included testimony from the victim, her sister, and her mother, and Petitioner's DNA found on the victim's mattress.  This was neither contrary to nor an unreasonable application of *Strickland*.  Logically, it would have been impossible to have produced any witness who could have said that the victim and Petitioner were "never alone," excepting, of course, the victim and Petitioner himself, as there is no indication that the two were being followed or recorded 24/7.  Furthermore, the evidence at trial suggested that Petitioner did not let "crowded conditions" deter him but instead showed that on two other occasions, Petitioner and the victim had sex while others were either in the same room or only a few doors down, and that Petitioner had first

inappropriately touched the victim while her siblings and mother were on the floor next to them. Thus, testimony from any of Petitioner's proposed witnesses would not have helped his case, and the "alibi" would have been eviscerated on cross-examination.  Counsel was therefore not ineffective in failing to present such an incredible defense, particularly in light of the fact that he admitted before sentencing that he had in fact engaged in sex with the victim.  It goes without saying that an attorney is never required to suborn perjury.

13.    Failure to interview and call "'other known witnesses to show motive or bias to fabricate.'"

In this claim, Petitioner argues that counsel was ineffective for failing to call certain witnesses who would have testified that the victim had said that she was "pissed" as Petitioner and that she "will be bringing her black boyfriend to trial to make [Petitioner] jealous" and that the victim and her mother conspired "to get rid" of Petitioner.  The state court rejected this claim, finding that the proposed testimony would have been inadmissible hearsay under Florida law and, alternatively, that the testimony was "not so significant that its addition to the trial would have changed the ultimate outcome" since there was "abundant and overwhelming evidence of [Petitioner's] guilt."

The state court's resolution of this claim is not contrary to or an unreasonable application of *Strickland*.  Even if counsel had presented the testimony of these witnesses, there is not a reasonable probability that the outcome of the trial would have been different.  For example, the proposed testimony about the victim planning to have her boyfriend attend trial to make Petitioner jealous would have in fact bolstered, rather than undermined, the victim's testimony that there was some kind of inappropriate relationship between her and Petitioner.

14.     Failure of State to disclose evidence favorable to Petitioner.

At trial, the State's crime lab analyst testified that Petitioner matched the DNA profile obtained from semen found on the victim's mattress, and that there was a 1 in 1.4 quadrillion chance "that this could be some other person" besides Petitioner.  Petitioner now charges that the State violated *Brady* when it withheld from him and his counsel information that would have undermined the statistical portion of the analyst's opinion.  In state court, Petitioner cited *Bevil v. State*, 875 So.2d 1265 (Fla. Dist. Ct. App. 2004), in support of his argument that the database used to compute the statistical probability was flawed, that the State knew the database was flawed at the time of his trial, and that the State improperly withheld this information.  In *Bevil*, the forensic service director for the Florida Department of Law Enforcement testified during the course of a *Frye* hearing, *see Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), that because there were errors in the FDLE population database and "because of concerns regarding the accuracy of the FDLE database, she had directed that the entire database be reexamined for errors and that, pending the completion of that reexamination, the FBI database be used instead." *Bevil*, 875 So.2d at 1267.  This admission underlay the *Bevil* court's conclusion that because the State "made no real effort" to "demonstrate that, notwithstanding that concern [about the accuracy of the database], the FDLE database was generally accepted in the scientific community," the use of the database violated *Frye*, and the court reversed and remanded for a new trial.  *Id.* at 1268-69.

The post-conviction court summarily rejected this claim as unsubstantiated, vague, conclusory, and "facially insufficient."

There is no dispute that the statistical foundation of the expert's opinion in this case was

the "Florida STR database," Doc. 20, Ex. O at 46 of 47, as opposed to the national FBI database,

and that counsel did not request a *Frye* hearing but instead stipulated to the admission of the

DNA analyst's credentials as an expert and to the admission of her report.  There is also no

dispute that counsel had concerns about "where the database information was obtained from."

Indeed, immediately before trial in this case, the court admonished the State about late disclosure

of evidence, reminding the prosecutor that "what's in state labs...is in [the State's] possession.

You are the State.  They are the State.  There's no difference as far as the duty to disclose."

Most importantly, the State cannot deny that the admission by the FDLE in *Bevil* that the state

database was flawed was made in open court, eight days before trial in this case.

The "suppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment, irrespective

of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Evidence is "material" under *Brady* "only if there is a reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would have been different."

*United States v. Bagley*, 473 U.S. 667, 682 (1985).  In turn, a "'reasonable probability' is a

probability sufficient to undermine confidence in the outcome."  *Id*.  The are the same standards

as those lying at the heart of *Strickland*.  *Id*.

In Petitioner's view, the State's failure to advise defense counsel that use of the FDLE

database had been suspended caused counsel erroneously to stipulate to the analyst's conclusions

and to forego a *Frye* hearing to test the general acceptance of the database in the scientific

community.  According to him, the DNA evidence was "material and prejudicial because [it]

was used to corroborate and bolster the alleged victim's testimony at trial."

While the State did not conceal the use of the FDLE database–it plainly appears in the analyst's report--it did not divulge other information which it is charged with knowing, i.e., that at the time this case was tried, the FDLE crime lab had suspended the use of its DNA database in favor of the FBI database based on possible flaws in the FDLE database.  Thus, the basis of the analyst's conclusions regarding the statistical probability that Petitioner was the donor of the semen found on the victim's mattress was possibly flawed.  For *Brady* purposes, though, the question remains whether there is a reasonable probability that if counsel had known this bit of information, the outcome of the trial would have been different.  The Court has little hesitation in accepting Petitioner's argument that if counsel had possessed this information, he might, at the very least, have raised the *Frye* issue as did counsel in *Bevil*.  However, even if counsel had succeeded in excluding the DNA evidence, there is not a reasonable probability that Petitioner would have been acquitted, as the evidence of an improper sexual relationship with the victim, including the reasonable inferences from Petitioner's own words, was overwhelming.  *See*, *e.g*., Doc. 20 at 8 of 47.

15.     Failure to challenge the State's DNA evidence.

This claim is part and parcel of the previous claim and fails for similar reasons.  First, if counsel did not know that the database was flawed, then there was no basis on which to challenge the DNA evidence or the expertise of the analyst.  As counsel noted, the analyst had been accepted many times as an expert, and further challenge to her would have been frivolous. Furthermore, it was reasonable, given the witness' conclusions, to get her off the stand as quickly as possible and not to provide the State with the opportunity to have her reiterate her findings before the jury.

Even if counsel should have challenged both the expert and the DNA evidence, the Court remains convinced that, in light of the other evidence against Petitioner, there is not a reasonable probability that the outcome of the trial was affected by the DNA evidence to the extent that confidence in the trial results is undermined. Without a doubt, much of the evidence hinged on the jury's assessment of the credibility of the witnesses, but as noted previously, the reasonable inferences to be drawn from Petitioner's letters supported the witnesses' testimony, even without reference to the DNA evidence linking Petitioner to the victim sexually.

16. Denial of right to public trial and failure of counsel to protect that right.

In this claim, Petitioner charges that the court improperly closed the courtroom during the victim's testimony and that counsel was ineffective for failing to object to the closure. This claim is patently without merit, as the state court found. Under Florida law, when a child under the age of 16 "is testifying concerning any sex offense, the court shall clear the courtroom of all persons," except for certain designated persons. Fla. Stat. Ann. § 918.16. Furthermore, when the victim of a sex offense is testifying, the court "shall clear the courtroom of all persons upon the request of the victim, regardless of the victim's age or mental capacity," with certain exceptions. *Id*. The closure of the courtroom is mandatory under these circumstances and requires no explanation. Through the prosecutor, the victim requested the closure of the courtroom during her testimony, and defense counsel was therefore not ineffective for failing to object to the closure of the courtroom during the victim's testimony or the testimony of any person under the age of 16.

17. "Errors and omissions cumulatively denied him a fair trial and the effective assistance of counsel."

Because counsel committed no errors of constitutional dimension, this claim is without merit, as the state court found.

> 18.   Misadvice regarding "willing participant" as mitigation at sentencing and abandonment "when the judge expressed shock at his idea."

According to Petitioner, the court imposed a harsher sentence on him than the agreed upon sentence after he wrote a letter to the court admitting the sexual contact with the victim and claiming that she was a "willing participant."  The state court rejected this claim as belied by the record, in that there was no "agreed upon" sentence, and that counsel was "taken unawares by the contents of the letter" when the court began reading it into the record.  The record supports these factual conclusions, and Petitioner has not presented clear and convincing evidence to overcome them as required by § 2254(e)(1).

## CONCLUSION

Having carefully considered the matter, the Court finds that none of Petitioner's claims has merit, and thus, it is respectfully  **RECOMMENDED** that the amended petition for writ of habeas corpus, Doc. 6, be **DENIED**, and this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this ___*3rd*___ day of June, 2008.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**